**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equity Recovery Specialists LLC, | No. CV-21-01889-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Select Portfolio Servicing Incorporated, et al., | |
| Defendants. | |

### INTRODUCTION

In December 2020, Plaintiff Equity Recovery Specialists, LLC ("Plaintiff") bought a parcel of real estate located in Maricopa, Arizona for just over $16,000 at a public auction. The property had been abandoned by its previous owner, who stopped making mortgage payments or paying homeowners' association ("HOA") fees in 2012. The auction arose after the HOA sued the previous owner to recover the overdue HOA fees, obtained a default judgment, and forced the property sale to satisfy the judgment.

After the auction, the property remained encumbered by a deed of trust ("DOT") in favor of Defendant Deutsche Bank National Trust Company ("Deutsche Bank"). The DOT secured a $160,000 home loan that had been extended to the previous owner by Deutsche Bank's predecessor-in-interest, but Deutsche Bank and its loan servicer, Defendant Select Portfolio Servicing, Inc. ("SPS") (together, "Defendants"), took no steps following the 2012 abandonment to collect on the overdue mortgage payments.

In March 2021, Plaintiff sent a letter to SPS. After identifying various reasons why,

1 in Plaintiff's view, Defendants would be legally barred from attempting to collect on the
2 underlying loan or enforce the DOT, the letter made the following offer: "[Plaintiff] would
3 prefer to reach an amicable resolution as to all issues arising out of or relating to the Loan
4 as opposed to litigating these contested issues. Enclosed herewith is a check for $10,000
5 offered in accord and satisfaction for you to release the DOT. *See* A.R.S. § 47-3311.
6 *Depositing the enclosed check will be deemed an acceptance of this offer*." Critically,
7 although Defendants never responded to the letter, SPS endorsed and deposited the $10,000
8 check that was enclosed with the letter.

9 Plaintiff interpreted SPS's conduct as proof that the offer in the March 2021 letter
10 had been accepted (and that the property was no longer encumbered by the DOT). To this
11 end, Plaintiff wrote another letter to SPS in July 2021 in which Plaintiff demanded that
12 SPS release the DOT. Defendants failed to respond to this letter, too. Afterward, Plaintiff
13 took out a hard money loan to develop the property, engaged in renovations, and eventually
14 sold the property for over $320,000 to a third-party buyer.

15 In this lawsuit, Plaintiff seeks a judicial determination that Defendants must release
16 the DOT, as well as unspecified damages. Plaintiff's overarching theory is that, by cashing
17 the $10,000 check that was enclosed with the March 2021 letter, which stated that the check
18 was in exchange for releasing the DOT, Defendants should be deemed as a matter of
19 contract law and/or equitable principles to have accepted that offer.

20 Now pending before the Court is Defendants' Rule 12(b)(6) motion to dismiss. The
21 motion is fully briefed (Docs. 15, 17, 23) and neither side requested oral argument. For
22 the following reasons, the motion is granted in part and denied in part.

**BACKGROUND**

I. Relevant Facts

The following facts, presumed true, are derived from Plaintiff's First Amended
Complaint ("FAC"). (Doc. 11.)

In 2006, non-party Brian Schmid ("Schmid") bought a home in Maricopa, Arizona,
which is located in Pinal County. (*Id.* ¶ 16.) Schmid also executed a note that was secured

by a first-position DOT. (*Id.* ¶ 18.) The note was for $160,000. (*Id.* at 37.) The DOT was recorded in October 2006 in the Pinal County Recorder's Office. (*Id.* ¶ 18.) The current beneficiary of the DOT, following an assignment, is Deutsche Bank. (*Id.* ¶ 19.)

In or around August 2012, Schmid abandoned the property and stopped making mortgage and HOA fee payments. (*Id.* ¶¶ 20-21.) "There is no document recorded in the county land records that shows Defendants, or their predecessors, took action toward enforcement under the DOT or collection of any of the installments due under the Note" following the 2012 abandonment. (*Id.* ¶ 30.)

On an unspecified date, the HOA filed a lawsuit against Schmid in Pinal County Superior Court for unpaid assessments, fines, fees, and other monies owed to the HOA. (*Id.* ¶ 22.)

On June 8, 2020, the HOA obtained a default judgment against Schmid. (*Id.* ¶ 23.)

On September 23, 2020, the court in the HOA lawsuit ordered that the property be sold pursuant to the default judgment. (*Id.* ¶ 24.)

On December 31, 2020, the property was sold at a public auction conducted by the Pinal County Sheriff. (*Id.* ¶ 25.) Plaintiff submitted the "highest and best bid" of $16,655.54. (*Id.* at 41-42.)

On March 22, 2021, Plaintiff sent a letter to SPS. (*Id.* ¶ 43-46.) The caption of this letter included the phrases "NOTICE: DEBT BARRED BY STATUTE OF LIMITATIONS" and "DEMAND: RELEASE DEED OF TRUST ACCORD AND SATISFICTION." (*Id.* at 55.) In the body of the letter, Plaintiff wrote in relevant part as follows:

> The Property used to be owned by Bryan Schmid ("Mr. Schmid") and is subject to the Acacia Crossing Homeowners Association ("HOA"). Mr. Schmid has not paid on this loan since August 2012 and has not paid the HOA since about then. Mr. Schmid moved out of the Property at about that time and abandoned any interest. No one has lived in the Property since 2012. According to Mr. Schmid, the previous loan servicer was aware that he abandoned the property, thus triggering the lender's duty to mitigate, which may only be accomplished through debt acceleration and a non-judicial foreclosure or a lawsuit against Mr. Schmid on the debt. Stated

> another way, a loan servicer cannot sit back and accrue default interest while letting the collateral sit vacant for nearly ten years. If there was not an actual debt acceleration, the duty to mitigate triggered a de facto acceleration.
>
> The HOA finally filed suit against Mr. Schmid and obtained a judgment of foreclosure against him on or about June 8, 2020, for seriously delinquent HOA dues, fines and other charges. A sheriff's sale did take place on or about December 31, 2020 and my client, ERS, was the winning bidder. *See* Sheriff's Certificate of Sale on Foreclosure, enclosed herewith.
>
> As stated above, there is no excuse for the Property to sit abandoned for nearly 10 years without any payment. SPS and/or its predecessors in interest had a duty to mitigate and the debt was as good as accelerated. Accordingly, any collection on the promissory note or enforcement of the DOT is barred by the six-year statute of limitations. *See* A.R.S. § 33-816 & A.R.S. § 12-548; *see also*, *Andra R. Miller Designs, LLC v. U.S. Bank, N.A.*, 418 P.3d 1038, 1040 (Ariz. App. 2018). Even assuming arguendo that the debt was not accelerated, collection efforts on any installment payments over six-years old are barred by the statute of limitations. Based upon a recent payoff, SPS is attempting to collect the full balance.
>
> Nonetheless, ERS would prefer to reach an amicable resolution as to all issues arising out of or relating to the Loan as opposed to litigating these contested issues. Enclosed herewith is a check for $10,000 offered in accord and satisfaction for you to release the DOT. *See* A.R.S. § 47-3311. *Depositing the enclosed check will be deemed an acceptance of this offer*. ERS takes no position with respect to any issues by and between Mr. Schmid and SPS.

(*Id.* at 55-56.) Enclosed with the letter was a check for $10,000. (*Id.* ¶ 44.)

On April 14, 2021, SPS endorsed and deposited the $10,000 check "for the benefit of Deutsche [Bank]." (*Id.* ¶ 48.) Otherwise, SPS did not respond to the March 2021 letter during the 90-day period after it was sent. (*Id.* ¶¶ 54, 91.)

On July 22, 2021, Plaintiff sent another letter to SPS. (*Id.* ¶ 51.) The caption of this letter included the phrases "NOTICE: DEBT SETTLED VIA ACCORD AND SATISFICTION" and "DEMAND: RELEASE DEED OF TRUST." (*Id.* at 62.) In the body of the letter, Plaintiff wrote in relevant part as follows:

> The [March 2021] Letter could not have been clearer: the Letter tendered an instrument as full satisfaction of the debt pursuant to pursuant to A.R.S. §

- 4 -

47-3311. A copy is enclosed for your ease of reference. SPS deposited the check on April 12, 2021. A.R.S. § 47-3311(c)(2) provided SPS with a 90-day grace period to change its mind and refund the $10,000 to ERS. That period expired on July 12, 2021. No tender was received. As of the date of this letter, ERS has not been given a release of deed of trust nor has one been recorded with the Maricopa County Recorder's Office.

**PLEASE BE ADVISED THAT** your deposit of ERS' check constituted an acceptance of full satisfaction of the debt pursuant to A.R.S. § 47-3311;

**PLEASE BE FURTHER ADVISED THAT** pursuant to A.R.S. § 47-3311(C)(2), SPS failed to tender the $10,000 back to ERS thus the deed of trust must be released.

**PLEASE BE FURTHER ADVISED THAT** SPS is now obligated to record a release of the deed of trust recorded in the Pinal County Recorder's on October 3, 2006, at document number 2006-139462 pertaining to the above referenced loan (the "DOT").

**IT IS HEREBY DEMANDED THAT** you release the DOT no later than August 25, 2021 or this office will file a lawsuit against you to enforce the accord and satisfaction agreement (*i.e.*, requiring you to release the DOT) and will seek all of ERS' costs and attorney fees incurred therein.

(*Id.* at 62-63.) SPS has, to date, never responded to the July 2021 letter. (*Id.* ¶ 52.)

On September 8, 2021, Plaintiff obtained a $150,000 hard money loan by using the property as security. (*Id.* ¶ 94(a).) Plaintiff thereafter spent $40,000 on property improvements. (*Id.* ¶ 94(b).)

On November 12, 2021, Plaintiff sold the property to a non-party buyer. (*Id.* ¶¶ 27, 94(d).) The purchase price was $322,000. (*Id.* at 52.) As part of the transaction, Plaintiff provided a personal guarantee to the title agency. (*Id.* ¶ 94(e).)

II.   Procedural History

On September 27, 2021, Plaintiff initiated this action by filing a complaint in Pinal County Superior Court. (Doc. 1-3 at 5-8.) Defendants later timely removed the action to this Court. (Doc. 1.)

On December 6, 2021, Plaintiff filed the operative FAC. (Doc. 11.)

On December 28, 2021, Defendants filed the pending motion to dismiss. (Doc 15.)

On January 11, 2022, Plaintiff filed a response.  (Doc. 17.)

On January 25, 2022, the parties filed a stipulation of dismissal as to Counts Three and Five of the SAC.  (Doc. 21.)

That same day, Defendants filed a reply in support of the motion to dismiss.  (Doc. 23.)

## DISCUSSION

I. <u>Legal Standard</u>

"[T]o survive a motion to dismiss under Rule 12(b)(6), a party must allege 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *In re Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  "[A]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party."  *Id.* at 1444-45 (citation omitted).  However, the Court need not accept legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 679-680.  Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 679.  The court also may dismiss due to "a lack of a cognizable theory."  *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. <u>Counts One And Two</u>

A. **The Parties' Arguments**

In Count One of the FAC, Plaintiff asserts a claim entitled "Breach of Express Contract."  (Doc. 11 ¶¶ 56-67.)  In a nutshell, Plaintiff alleges that the March 2021 letter constituted an offer to obtain "a full satisfaction and release of the DOT lien against the Property" in exchange for $10,000, that Defendants unconditionally accepted this offer by endorsing and cashing the enclosed check, and that Defendants have now breached their obligations under the resulting contract by failing to release the DOT.  (*Id.*)  As a remedy,

Plaintiff seeks "Specific Performance requiring Defendants to record a lien release of the DOT in the Pinal County land records or provide a recordable lien release," as well as unspecified damages. (*Id.*) In Count Two of the FAC, Plaintiff asserts a claim entitled "Breach of Implied Contract." (*Id.* ¶¶ 68-78.) The only relevant difference from Count One is that SPS's act of cashing the check is characterized, in Count Two, as "impliedly" accepting the offer set forth in the March 2021 letter. (*Id.* ¶ 70.)

Defendants move to dismiss Counts One and Two for failure to state a claim. (Doc. 15 at 11-12.) Defendants argue that, even assuming Plaintiff's March 2021 letter constituted a valid offer to pay $10,000 in return for a release of the DOT, "the FAC does not sufficiently allege facts that, even if true, would show that Defendants accepted any purported contract offer from Plaintiff." (*Id.*) Defendants continue: "SPS's stamp endorsement on the back of a check and its deposit of the check clearly do *not* constitute a manifestation of mutual assent to the terms proposed in the First Letter. Indeed, if such actions could be construed as acceptance of the terms allegedly offered by the First Letter, it would invite all manner of attempts by unscrupulous individuals to gain windfalls at the expense of large organizations that, like SPS, process multitudinous payments from clients and customers. Such individuals could include any number of asserted 'contract' terms with a check made payable to the organizations they intend to take advantage of, and, whenever such checks are deposited as a matter of routine process, seek to enforce those terms on the ostensible basis that the cashing of the check constituted an acceptance. This cannot be the law. And it is not the law." (*Id.* at 13.)

In response, Plaintiff begins by clarifying that its breach-of-contract claim in Count One "stands alone" and is "independent of" its now-dismissed statutory claim in Count Three, which arose under A.R.S. § 47-3311. (Doc. 17 at 8.) On the merits, Plaintiff argues that Defendants fail to offer any authority in support of their assertion "that the endorsement and deposit of the check, (along with a letter stating the terms for negotiation), insufficiently alleges acceptance." (*Id.* at 8-9.) Plaintiff also identifies *Frank Culver Electric, Inc. v Jorgenson*, 664 P.2d 226 (Ariz. Ct. App. 1983), as a case establishing that

"the endorsement of a check can be an expression of assent." (*Id.* at 9-11.) Finally, Plaintiff notes that its theory of acceptance is not based solely on the endorsement and deposit of the check but also on "the context of the circumstances of the parties and the text of the two-page First Letter that accompanied the check." (*Id.*)

In reply, Defendants argue for the first time that Counts One and Two "are nothing more than an attempt by Plaintiff to assert its failed Accord and Satisfaction claim in a way that gets around the required elements of such a claim imposed by A.R.S. § 47-3311" and that "allowing the same claim to proceed couched as purported breach of contract claims would violate the statute." (Doc. 23 at 2, 5-7.) Alternatively, Defendants argue that Counts One and Two fail on the merits because "an express contract is an agreement made by words written or spoken" but "[t]here is no such written or alleged oral agreement here" and "[t]he alleged depositing of Plaintiff's check into a collection account by SPS is consistent with SPS merely processing the check as it came in along with the many other checks that it collects from home loan borrowers, and the FAC does not otherwise sufficiently allege an intentional acceptance of the terms proposed by Plaintiff in its accompanying First Letter." (*Id.* at 7-8.) Defendants also contend that Plaintiff's reliance on *Jorgenson* is misplaced because the parties in that case knew each other and were engaged in ongoing compromise negotiations at the time the check was cashed, whereas this case involves a "contract among strangers where there ha[ve] been no reciprocal communications between them." (*Id.* at 8.)

B.   **Analysis**

Defendants' motion to dismiss Counts One and Two is denied. As a threshold matter, although Defendants argue, for the first time in their reply, that Counts One and Two must be dismissed because they are effectively claims under A.R.S. § 47-3311 and the required statutory elements are not satisfied here (Doc. 23 at 2, 5-7), a "district court need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Defendants' motion only identified one ground for seeking dismissal of Counts One and Two—the failure to plead facts establishing that

Defendants accepted the offer set forth in Plaintiff's March 2021 letter. (Doc. 15 at 11-13.) Accordingly, the Court will limit its analysis to that issue.

In Arizona, a party asserting a claim for breach of contract must prove (1) the existence of the contract, (2) a breach of that contract, and (3) resulting damages. *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004). As for the first element, "[f]or an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) (quoting Restatement (Second) of Contracts § 50). "An acceptance is a manifestation of assent to the terms [of an offer] made by the offeree in a manner invited or required by the offer." *Id.* at 1321 (cleaned up).

Defendants' position is that SPS's act of cashing the $10,000 check could not, as a matter of law, qualify as acceptance because there was no manifestation of assent to Plaintiff's offer "by words written or spoken." (Doc. 23 at 7.) This argument lacks merit. Although express written or spoken words are certainly one way to accept an offer to enter into a contract, they are not the only way. As noted in § 19 of the Restatement (Second) of Contracts, which has been cited with approval by Arizona courts,[1] "[t]he manifestation of assent may be made wholly or partly by written or spoken words *or by other acts or by failure to act*." *Id.* (emphasis added). Depending on the circumstances, "[c]onduct may often convey as clearly as words a promise or an assent to a proposed promise." *Id.*, cmt. a. In a related vein, although the general rule is that "an offeror does not have power to cause the silence of the offeree to operate as acceptance," this rule is subject to various exceptions. Restatement (Second) of Contracts § 69, cmt. a. One of those exceptions arises "where the offeree silently takes offered benefits." *Id.*

Courts in Arizona and elsewhere have applied these principles to hold that the act of cashing and retaining the proceeds of a check that accompanies a contract offer may qualify as a valid manifestation of assent to the offer, even if the offeree does not otherwise

---

[1] *See, e.g.*, *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006).

use written or verbal words to signal its assent. For example, in *Empire Machinery Co. v. Litton Business Telephone Systems*, 566 P.2d 1044 (Ariz. Ct. App. 1977), Empire sent a proposed contract to Litton for installation of a telephone system as well as a $8,546 check to cover the down payment. *Id.* at 1046. Although Litton did not sign the contract and never installed the proposed telephone system, it cashed the check and retained the proceeds. *Id.* at 1046, 1049. In the ensuing breach-of-contract action, the trial court ruled in Litton's favor, "in essence finding, as a matter of law, that a binding contract was never consummated between the parties," but the Arizona Court of Appeals reversed, holding in relevant part that "the cashing of Empire's down payment check raises an issue of fact as to whether Litton assented to the contract. . . . We agree with Litton that the mere acceptance of the check in accordance with the terms of the offer does not constitute any evidence of binding conduct on Litton's part. It is the cashing of that check and the retention of the proceeds over a period of several months that gives rise to the factual inferences as to Litton's intent to enter into a binding contractual relationship with Empire." *Id.* at 1045, 1050.

Similarly, in *Jorgenson*, after a general contractor and subcontractor got into a dispute over the outstanding balance owed to the subcontractor, the general contractor "presented the [subcontractor] with a check marked 'final invoice' in an amount less than that requested by the [subcontractor] and indicated that it was all they were going to pay. The [subcontractor] accepted the check and cashed it." 664 P.2d at 227. Despite cashing the check, the subcontractor then sued the general contractor for breach of contract. *Id.* The trial court ruled in the subcontractor's favor but the Arizona Court of Appeals reversed, holding that "the acceptance and cashing of the check . . . [was] the equivalent of an assent. Thus, a meeting of the minds did occur by virtue of the [subcontractor's] conduct . . . . This is a case of actions speaking louder than words, or, as here, a lack of words of dissent." *Id.* at 228.

And again, in *Walker v. Rogers*, 182 S.W.3d 761 (Mo. Ct. App. 2006), "Ben and Karen's offer to purchase Gene's entire ownership interest in Albany invited Gene to

- 10 -

accept the offer by indorsing the $26,000 check." *Id.* at 768. Applying § 50 of the Restatement (Second) of Contracts—the same provision cited with approval by the Arizona Court of Appeals in *K-Line Builders*—the court held that the decision to sign and negotiate the check constituted a valid manifestation of assent to enter into the proposed contract: "When Gene signed his name above the restrictive indorsement placed on the check by Ben, Gene indicated that he accepted the offer in a manner invited by the offeree, i.e., indorsement of the check." *Id.* Given this backdrop, Defendants are not entitled to the dismissal of Counts One and Two on the ground that verbal or written words of assent are always a prerequisite to contract formation. The Court is also unpersuaded by Defendants' argument that the denial of their motion would "invite all manner of attempts by unscrupulous individuals to gain windfalls at the expense of large organizations that, like SPS, process multitudinous payments from clients and customers." (Doc. 15 at 13.) Putting aside the fact that Defendants' bogeyman scenario is premised on several facts not alleged in the FAC, the ruling here is quite narrow. The only ground on which Defendants properly moved for dismissal of Counts One and Two is that the act of cashing a check cannot, alone, constitute acceptance of a contract offer unless it is accompanied by written or spoken words of assent. The Court's rejection of that argument is not tantamount to a determination that Defendants lack other potential defenses. *See generally United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (under "the principle of party presentation," courts "should not[] sally forth each day looking for wrongs to right" and instead should "normally decide only questions presented by the parties") (citations and internal quotation marks omitted).

III.     Counts Three And Five

After Defendants moved to dismiss Counts Three and Five (Doc. 15 at 6-11, 16-17), the parties filed a stipulation that both counts may be dismissed (Doc. 21). The stipulation, which is signed by both sides' counsel of record, provides: "The parties stipulate to dismissal of Count III with prejudice and dismissal of Count V without prejudice." (Doc. 21 at 1.) However, after entering into the stipulation, Defendants argued

in their reply that "Plaintiff's claim for Equitable Indemnity [in Count Five] should also be dismissed with prejudice because Plaintiff fails to even address Defendants' arguments for dismissal with prejudice, thereby waiving any counterargument, and the FAC lacks facts sufficient to show that such a claim could even ripen in the future." (Doc. 23 at 2.)

Per the parties' stipulation, Count Three is dismissed with prejudice. Count Five must also be dismissed, and the only controversy as to that claim is whether the dismissal is with or without prejudice. Defendants do not explain why the position they took in the stipulation differs from the position they took in their reply. Under the circumstances, the Court will hold Defendants to their stipulation. *See* LRCiv 83.7. The dismissal of Count Five is without prejudice.

IV.   Count Four

   A.   **The Parties' Arguments**

In Count Four of the FAC, Plaintiff asserts a claim entitled "Quasi Contract-Estoppel." (Doc. 11 ¶¶ 90-97.) Here, Plaintiff alleges that Defendants' conduct of cashing the $10,000 check and not responding to the letters constituted "a promise by Defendants to record a release of the DOT lien or provide a release," that Plaintiff reasonably relied on this promise, and that the reliance was detrimental because Plaintiff subsequently took out a hard-money loan, made renovations, sold the property, and provided a personal guaranty to the title company as part of the sale transaction. (*Id.*)

Defendants argue that Count Four must be dismissed because it is an unjust enrichment claim but "Plaintiff has not plead[ed] facts showing it was impoverished, that Defendants were enriched, or that there was any absence of justification for any enrichment or impoverishment." (Doc. 15 at 13-16.) As for impoverishment, Defendants note that Plaintiff earned a large net gain on the sale of the property, even when the cost of improvements is included, and further note that "Plaintiff does not allege that Defendants failed to apply the $10,000 paid by Plaintiff to the balance of the Loan. To the extent Defendants have accurately reduced the balance of the Loan by that same amount, any obligation upon Plaintiff under the Warranty Deed to pay off the Loan to release the Deed

of Trust has thus been reduced by that same amount Plaintiff allegedly paid. Thus, Plaintiff is no worse off financially than it would have been had Defendants returned the $10,000 check to Plaintiff immediately upon receipt—i.e., it received a direct benefit commensurate with his expenditure." (*Id.*) As for enrichment, Defendants contend it is absent because "the $10,000 payment . . . merely would have reduced the outstanding balance of the loan that Defendants may eventually recover anyway, either through foreclosure or by Plaintiff's payment of the outstanding balance in accordance with the Warranty Deed." (*Id.*) As for the absence of justification, Defendants contend that Plaintiff cannot establish it for the same reasons Plaintiff cannot establish impoverishment or enrichment. (*Id.*) Finally, Defendants contend that to the extent Count Four is construed as a claim for promissory estoppel, it fails for two reasons: (1) "the FAC is devoid of any non-conclusory allegation that Plaintiffs actually made a promise to release the [DOT]" and (2) "Plaintiff has not alleged facts that, if true, show that it detrimentally changed its position based on its erroneous assumption that an accord and satisfaction was effectuated." (*Id.*)

Plaintiff opposes Defendants' dismissal request as to Count Four. (Doc. 17 at 11-13.) As an initial matter, Plaintiff contends that any suggestion the $10,000 payment was applied to reduce Schmid's outstanding loan balance is misplaced because that fact is not alleged in the FAC, which merely alleges that the money was placed in a "Payment Clearing Account." (*Id.*) More broadly, Plaintiff argues that, even assuming the $10,000 was applied to the outstanding balance of Schmid's loan, this would not qualify as a benefit from Plaintiff's perspective because (1) Plaintiff views the underlying loan as uncollectible (and, thus, a reduction of the ostensible balance is meaningless); (2) Plaintiff's intent in sending the check was "to eliminate the cloud imposed on [Plaintiff's] title by reconveyance," not to obtain a balance reduction; and (3) because Plaintiff "is not the debtor" on the underlying loan, it has no interest in obtaining a balance reduction. (*Id.*) Plaintiff summarizes: "If [Plaintiff] was a non-debtor but mistakenly believed it could compromise the lien through accord and satisfaction by tendering a check, then SPS had no business endorsing and negotiating the check into a collection account. They should

have, and must still, return the money. . . . At the very least, [Plaintiff] has pleaded a claim for restitution for the $10,000.00 under the Quasi-Contract claim." (*Id.*)  Finally, Plaintiff disputes that it earned a massive profit on the overall transaction, noting that it took out a $150,000 hard-money loan and spent an additional $40,000 on improvements and still bears "financial risk" due to its title guarantee.  (*Id.*)

In reply, Defendants argue that "the FAC does not allege that Plaintiff has been impoverished, but rather that it reaped significant financial gains from its transactions with the Property.  And although Plaintiff argues that the FAC adequately alleges Defendants were enriched by the $10,000 Plaintiff purportedly paid to SPS, recovery under quasi contract (i.e., unjust enrichment) theory is barred here because Plaintiff does not allege that it at any time requested a refund from Defendants.  Moreover, even if the claim could survive these fatal defects (it cannot), Plaintiff's Quasi-Contract claim should be dismissed to the extent it seeks more than restitution of the $10,000 allegedly paid to SPS." (Doc. 23 at 3, 9-11.)

B. **Discussion**

Plaintiff seems to agree, and in any event does not dispute, that Count Four should be construed as an unjust enrichment claim.  Under Arizona law, "[a]n unjust enrichment claim requires proof of five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Wang Elec., Inc. v. Smoke Tree Resort, LLC*, 283 P.3d 45, 49 (Ariz. Ct. App. 2012) (citation and internal quotation marks omitted).  As for the final element, courts have concluded that "it would undermine equitable principles . . . to allow an unjust enrichment claim to proceed where Plaintiff has failed to take readily available actions—such as seeking a refund—to avoid the unjust enrichment. . . . [T]he availability of a refund provides an adequate remedy that precludes any claim for an equitable remedy such as unjust enrichment." *Naiman v. Alle Processing Corp.*, 2020 WL 6869412, *4 n.3 (D. Ariz. 2020).

Here, there is no allegation in the FAC that Plaintiff ever requested a refund of the

$10,000 payment or that such a request would be futile. Thus, even assuming that Defendants' retention of the proceeds for purposes other than securing a release of the DOT would otherwise support an unjust enrichment claim, Count Four must, in its current form, be dismissed.

V. <u>Leave To Amend</u>

Plaintiff seems to request leave to amend in the event of dismissal. (Doc. 17 at 7-8.) Defendants oppose any such request on futility grounds. (Doc. 15 at 17.)

Plaintiff's amendment request is governed by Rule 15(a) of the Federal Rules of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "This policy is 'to be applied with extreme liberality.'" *Id.* (citation omitted). Thus, Plaintiff's amendment request should be granted unless "the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

On the one hand, the Court agrees with Defendants that any request for leave to amend should be denied as to Counts Three and Five. As discussed above, the parties have already stipulated that those claims may be dismissed. Although the dismissal of Count Five is without prejudice, that does not mean Plaintiff should be allowed to reassert it as part of *this* case, particularly where Plaintiff abandoned it in the face of a motion to dismiss. On the other hand, with respect to the remaining claim being dismissed (Count Four), leave to amend is granted because it may be possible for Plaintiff to allege additional facts intended to cure the deficiencies raised above.

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that Defendants' motion to dismiss (Doc. 15) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that Plaintiff may file a Second Amended Complaint ("SAC") within 21 days of the issuance of this order. If Plaintiff files an SAC, the changes shall be limited to attempting to cure the deficiencies raised in this order and Plaintiff shall, consistent with LRCiv 15.1(a), attach a redlined version of the pleading as an exhibit.

Dated this 6th day of May, 2022.

Dominic W. Lanza
United States District Judge